

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 30, 1958

Honorable Robert S. Calvert,
Comptroller of Public Accounts,
Capitol Station,
Austin, Texas

Opinion No. WW-351

Re: What is the General Statutory
authority of the Board for
Texas State Hospitals and Special
Schools to establish the Central
Multilith Service, the Motor Pool
and the Central Supply Service,
and related question.

Dear Mr. Calvert:

You have asked an official opinion from this office
concerning the following questions:

"1. What is the General Statutory authority
for the

    a. Central Multilith Service

    b. The Motor Pool

    c. The Central Supply Service.

"2. If transfers can not be made from the
Board itself to an Institution, how can
the Central Multilith Service, the Motor
Pool and the Central Supply Service be
reimbursed?"

Under the General Appropriation Bill enacted by the
55th Legislature, Regular Session, 1957, we find the follow-
ing provision relating to the Board for Texas State Hospitals
and Special Schools, which provision reads as follows:

"CENTRAL SUPPLY SERVICES
Out of Central Supply Revolving Fund:
Out of any unencumbered balance remaining
in the Central Supply Service Revolving Fund as
of August 31, 1957, after the provision for the
Hog Farm Revolving Fund, there is hereby reappro-
priated to be used to pay salaries and to finance
on a reimbursable basis the obtaining, storing,
handling and distribution of United States surplus

property and commodities (including the purchase of office supplies and maintenance of office equipment) to various institutions under the jurisdiction of the Hospital Board, and for the operation of the Central Multilith Services as provided for in Section 19 of this Article, the sum of, or so much thereof as may be available."

Section 16, page 930 of this Act reads as follows:

"Motor Pool. The Board for Texas State Hospitals and Special Schools may maintain and operate a Motor Pool to serve the institutions under its jurisdiction, and may establish such rules and regulations as in its judgment are necessary to the efficient operation of the Motor Pool. Any balance remaining in the Motor Pool Fund at the end of the fiscal year ending August 31, 1957, and at August 31, 1958, plus all receipts deposited to its credit, are appropriated for the payment of salaries, purchase of materials and equipment, including trucks and buses, and other expenses necessary to the operation of the Motor Pool for each of the fiscal years ending August 31, 1958, and August 31, 1959, respectively."

Section 19, page 930 of this Act reads as follows:

"Central Multilith Services. Out of the appropriations made to it in the item described for Other Operating Expenses, the Central Office of the Hospital Board is authorized to establish a revolving fund from which to finance central multilithing services to the respective institutions under its jurisdiction. Such revolving fund is to be reimbursed by payments from the respective institutions using such central services; and such reimbursements are hereby appropriated to the Central Office for the same purposes."

The funds for the Central Supply Services, the Motor Pool and the Central Multilith Services are appropriated to the Central Office of the Board for Texas State Hospitals and Special Schools.

The provisions quoted above on the Central Supply Services and the Central Multilith Services provide for a reimbursement by the institutions using such services to the revolving funds. The provision, quoted above on the Motor Pool, authorizes the Board to maintain and operate a Motor Pool to serve the institutions under its supervision and authorizes the Board to establish rules and regulations as in its judgment is necessary to the efficient operation of the Motor Pool.

You are concerned with the problem of whether or not the Board has authority to set up the Motor Pool, the Central Multilith Services and the Central Supply Services. The Texas Legislature, in 1949 in Article 3174, Section 2, Vernon's Civil Statutes, granted to the Board for Texas State Hospitals and Special Schools the following powers:

"... Effective September 1, 1949, the control and management of, and all rights, privileges, powers, and duties incident thereto including building, design and construction of the Texas State Hospitals and Special Schools which are now vested in and exercised by the State Board of Control shall be transferred to, vested in, and exercised by the Board for Texas State Hospitals and Special Schools. Provided, however, that the Board of Control shall continue to handle purchases for such institutions in the same manner as they do for other State agencies."

It was clearly the intent of the Legislature in setting up this Board for Texas State Hospitals and Special Schools that they were to have certain implied powers to manage and control the schools and hospitals listed in Article 3174(b) as Eleemosynary Institutions under the control of the Board for Texas State Hospitals and Special Schools. The 55th Legislature in its appropriation bill disclosed its intent when it provided in the Appropriation Act a procedure to follow by which a Motor Pool, a Central Multilith Service and a Central Supply Service System could be established, whereby the various institutions could interchange supplies and equipment and also pay their proportionate part of the costs of maintaining these services.

It was held in Brown v. Clark, 116 S.W. 360 (1909) that the grant of a specific power or the imposition of a definite duty by a statute confers by implication authority to do whatever is necessary to execute the power or perform the duty. In the instant case, the Legislature set up the Board for Texas State Hospitals and Special Schools and gave it the power and duty to manage and control the various institutions

under its supervision and, therefore, this general statutory authorization to manage and control the various institutions carried with it the implied right to set up various methods so that the several institutions could share the Motor Pool, Multilith Services and other equipment.

Therefore, it is the opinion of this office that in answer to your question No. 1, the general statutory authority for the Board to set up a Motor Pool, a Central Multilith Service and a Central Supply Service is found in Article 3174(b), Section 2, which sets up the Board for Texas State Hospitals and Special Schools, and which article grants to that Board the control and management of the various schools and hospitals under its supervision. The manifestation of implied power is even more strongly presented by the action of the 55th Legislature in the Appropriation Act, which specifically provides that the Board set up these different services.

In view of the answer to the first question, we do not feel it necessary to answer the second question you propounded to us.

SUMMARY

The Board for Texas State Hosptials and Special Schools has the right to establish a Motor Pool, a Central Multilith Service and a Central Supply Service to be used by the institutions under its supervision. The Statutory authorization of the creation of these various services is found in Article 3174 (b), Section 2, which created the

Board for Texas State Hospitals and
Special Schools.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Linward Shivers

Linward Shivers
Assistant

LS:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

J. C. Davis, Jr.
Leonard Passmore
John H. Minton, Jr.
Ralph R. Rash
REVIEWED FOR THE ATTORNEY GENERAL

By: W. V. Geppert.